Date signed February 05, 2015



UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| In re: | |
|---|---|
| **Ronald Cohen Management Company,** | Case No. 14-23399<br>Chapter 11 |
| **Debtor.** | |

MEMORANDUM OF DECISION

This matter is before the court on a motion to dismiss this chapter 11 case filed by Tower Oaks Boulevard, LLC, TOB, Inc., Oak Plaza, LLC, David T. Buckingham, Richard D. Buckingham and Susan E. Buckingham (the "Judgment Creditors") and the opposition filed by the debtor Ronald Cohen Management Company (the "Debtor").[1] For the reasons set forth herein, the court concludes that the case meets the standards for dismissal established by the Fourth Circuit Court of Appeals in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), and will grant the motion.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference of the United States District Court for the District of

---

[1] A hearing on the motion was held on November 26, 2014. A different judge presided at the hearing. The undersigned judge has read the filings and exhibits and listened to the hearing. No witnesses testified at the hearing and so there are no credibility determinations to be made in resolving the motion.

Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## Findings of Fact

*The Debtor*

On August 27, 2014, the Debtor filed a bare bones petition for relief under chapter 11. The Debtor's disclosure under Federal Rule of Bankruptcy Procedure 2016(b) states that counsel for the Debtor received a $50,000.00 retainer from the Debtor "through its President, Ronald J. Cohen," and that Mr. Cohen guaranteed payment of the fees incurred by the Debtor for service rendered in the case.  ECF 4 at ¶¶ 1, 4.

After an extension, the Debtor filed its Schedules and Statement of Financial Affairs on September 12, 2014.  Mr. Cohen, as president and 100% owner, signed the filings under the penalty of perjury.  The Summary of Schedules reflects no real property; personal property valued at $66,500.00; secured creditors holding claims totaling $65,000.00; and unsecured nonpriority claims of $6,820,962.08.  On Schedule B, the personal property consists of a 100% ownership interest in TCC Management Services, LLC valued at $0.00; a $4 million counterclaim asserted by the Debtor in the United States District Court for the District of Columbia valued in an unknown amount, as the counterclaim was dismissed by the trial court but is currently on appeal; and four vehicles including a 2004 Chevrolet Silverado ($1,000.00), 2009 Mercedes S63 ($50,000.00), 2000 Toyota RAV4 ($500.00) and 2011 Toyota 4Runner ($15,000.00).  ECF 16 at pp. 3-5.  The sole secured creditor scheduled is Eagle Bank holding a lien in the amount of $65,000.00 on the scheduled Mercedes and Toyota 4Runner.  *Id*. at p. 6. Schedule F essentially lists two creditors – Goozman, Bernstein & Markuski in the amount of $64,371.55 for a disputed attorney's fees claim and Judgment Creditors' claims resulting from judgments entered by the Circuit Court for Montgomery County, Maryland, on May 23, 2014.

*Id*. at pp. 8-9.  These claims are also disputed.  As scheduled, the Judgment Creditors each have a claim of $3.8 million, except for Tower Oaks Boulevard, LLC, with a claim of $6,756,590.53.  Schedule H identifies Ronald Cohen Investments, Inc. ("RCI") as a co-debtor to the Judgment Creditors, and identifies Mr. Cohen, individually, as a co-debtor to Eagle Bank.  *Id*. at p. 11.

On October 15, 2014, Schedule B was amended to reduce the total assets to $16,500.00.  ECF 39.  The Mercedes was removed and, as to stock and interests in businesses, the Debtor added that TCC Management Services, LLC owned 1% of the membership interests in 699 N. Investors, LLC, valued at $0.00.  Despite removing the Mercedes as an asset, Schedule D was not amended.  As reflected on the original Schedule D, the lien on the Mercedes accounts for $50,000.00 of the $65,000.00 scheduled secured claims.  ECF 16 at p. 6.  Schedule F was amended on December 10, 2014, adding a disputed, unliquidated claim in the amount of $8,056,010.00 as to TIAA Union Place Phase I, LLC and a disputed, unliquidated claim in the amount of $0.00 as to Union Place Phase I, LLC.  ECF 57.  Simultaneously, Schedule H was amended to add Mr. Cohen, Alan Cohen, PMAS LLC, Union North Phase I, LLC and K Street Developers, LLC as co-debtors with respect to these added claims.  *Id*.

The Statement of Financial Affairs reflects that the Debtor last earned income in 2012, and earned $0.00 in 2013 and 2014.  Office furniture was sold for $2,200.00 in 2014.  On October 15, 2014, the Statement of Financial Affairs was amended to account for the Mercedes being removed from Schedule B.  ECF 40 at p. 5.  In section ten, "Other transfers", the Debtor lists the Mercedes being transferred to Mr. Cohen, as the sole shareholder, on November 7, 2012, and stated "Ronald J. Cohen makes capital contributions to Debtor for purposes of making payments to EagleBank; EagleBank's loan is secured by this vehicle."  *Id.*

On October 30, 2014, this court (J. Mannes) entered an Order Granting Relief from Automatic Stay. ECF 45. The Debtor moved for stay relief to allow it, among other requested relief, to proceed with appeals in the Maryland courts. After a hearing before Judge Mannes on October 27, 2014, the court modified and/or annulled the stay to allow the Debtor to pursue its appeals. The court denied the Debtor's request that the stay be modified as to certain non-debtor appeals, determining that the property owners (Congressional Village Associates, LLC, 1570 Associates Limited Partnership and 121 Associates Limited Partnership) were not before the court and were not subject to the automatic stay.

*The Judgment Creditors' Litigation*

The facts surrounding the state court litigation between the Debtor and the Judgment Creditors are not disputed. On September 10, 2012, the Judgment Creditors brought a contract action in the Circuit Court for Montgomery County, Maryland, against the Debtor and RCI (among others).

Following a partial determination on summary judgment and a jury trial, judgment was entered on May 23, 2014, against the Debtor and RCI. The order reflects, as to Count 1 of the amended complaint, judgment in favor of Tower Oaks Boulevard LLC against RCI and the Debtor for rent from February 1 to November 30, 2011, in the amount of $599,508.57 and from December 1, 2011, to November 30, 2012, in the amount of $947,379.58, additional damages in the amount of $682,889.38 and pre-judgment interest from January 22 to May 23, 2014, in the amount of $36,240.51. As to Count 2, compensatory damages of $2.3 million were awarded in favor of all named plaintiffs and against RCI and the Debtor and punitive damages against the Debtor in the amount of $1.5 million. Further, the judgment awarded $690,572.49 for attorney's fees and expenses to Tower Oaks Boulevard, LLC. The Debtor and RCI filed a Motion for

Judgment Notwithstanding the Verdict, to Partially Revise the Judgment and to Conform the Judgment to the Verdict, and a Motion to Stay Execution of Judgments, that were denied on July 2, 2014.  On July 8, 2014, the Debtor and RCI filed their Notice of Appeal with respect to the judgment and the Circuit Court's Orders that were entered on July 2, 2014.

On July 8, 2014, at Tower Oaks Boulevard, LLC's request, the Montgomery County Sheriff levied the Debtor's alleged interests in certain real property located in Rockville, Maryland, and titled in the name of others.  The Sheriff scheduled the first of three sales for August 27, 2014.  On July 16, 2014, the title owners, Congressional Village Associates, LLC, 1570 Associates Limited Partnership and 121 Associates Limited Partnership (the "Levied Entities"), filed a Motion to Release From Levy Certain Real Property, Request for Sanctions, and Request for Hearing ("Motion to Release").  The owners of the Levied Entities are Alan Cohen, Craig Cohen and Sue-Ann Cohen Siegel, Mr. Cohen's adult children.  On August 18, 2014, the Circuit Court held a hearing and, on August 19, 2014, issued an oral opinion piercing the corporate veils of the Levied Entities.  The transcript of Judge Ronald B. Rubin's ruling on August 19, 2014, is part of record in this case and was relied upon by the Judgment Creditors in their motion to dismiss this bankruptcy case.  The court addresses these findings further in the discussion below.

Judge Rubin's order denying the Motion to Release was entered on August 25, 2014.  On August 27, 2014, the same day that the bankruptcy petition was filed, the non-debtor property owners noted an appeal of the denial of the Motion to Release.  The Sheriff cancelled the sale of the interests in the Levied Entities as a result of the bankruptcy filing.  Later, on September 12, 2014, the Debtor and RCI also noted an appeal of the denial of the Motion to Release.

An additional state court action was filed by the Judgment Creditors post-petition, on November 3, 2014 (the "Successor Liability Action"), naming numerous alleged Cohen-related defendants (excluding the Debtor). The complaint is 62 pages long with 42 counts for personal liability for corporate obligations as to Mr. Cohen, successor liability, fraudulent conveyance, civil conspiracy and alter ego and instrumentality liability.

The Successor Liability Action prompted the Debtor to commence an adversary proceeding in this case on December 2, 2014. Adv. Proc. 14-850. It seeks, among other things, a declaration that the Successor Liability Action is void as filed in violation of the automatic stay, noting that actions to avoid alleged fraudulent conveyances from a debtor constitute property of the debtor's estate and can only be brought by the trustee or debtor-in-possession, and Count II seeks injunctive relief. The Debtor filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, asserting that the Judgment Creditors are proceeding, in effect, against the Debtor. Alternatively, the Debtor argued that if it is determined that it has an interest in the property owned by other entities only it, as debtor-in-possession, has the right to pursue estate property for the benefit of all creditors. This court held a hearing on the Emergency Motion on December 11, 2014, denying the Emergency Motion for Temporary Restraining Order and resetting a hearing on the Motion for Preliminary Injunction as appropriate.

As of the date of this ruling, the Debtor remains in possession and no committee was appointed by the United States Trustee.

### Conclusions of Law

In *Carolin Corp.*, 886 F.2d 693, the Fourth Circuit examined whether "a bankruptcy court may dismiss a voluntary Chapter 11 bankruptcy petition at the very outset because it was

not filed 'in good faith.'" *Id*. at 694.  The Court determined that the "for cause" language in 11 U.S.C. §§362(d) and 1112(b), together with Fed. R. Bankr. P. 9011(a), create an implicit good faith filing requirement in the Bankruptcy Code.  *Id*. at 698-99.  The Court stated:  "Decisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made."  *Id*. at 700.  The Court outlined the appropriate standards for bad faith dismissal, concluding that it is appropriate only when a showing has been made of "both objective futility and subjective bad faith."  *Id*.  The Court acknowledged that "proof will inevitably overlap" the two prongs of the inquiry.  *Id*. at 701.

*Subjective Bad Faith*

In appraising subjective bad faith, the Court stated that the "aim is to determine whether the petitioner's real motivation is to abuse the reorganization process and to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities."  *Id*. at 702 (citation and internal quotation marks omitted).  The Court avoided establishing bright line rules in conducting a bad faith inquiry and stated "that a totality of circumstances inquiry is required; that any conceivable list of factors is not exhaustive; and that there is no single factor that will necessarily lead to a finding of bad faith."  *Id*. (citations and internal quotation marks omitted).  It is beyond dispute that, in determining whether a debtor has acted in bad faith, the court can properly consider the pre-petition actions of a debtor.  Indeed, because such motions are filed early in the case, the debtor's pre-petition actions may be the only evidence upon which to consider the matter.

Here, the court concludes the case was filed with subjective bad faith. The court begins with the detailed findings of the Circuit Court. Judge Ronald B. Rubin found that the Debtor and Mr. Cohen, its 100% owner, took steps to render the Debtor judgment proof in anticipation of the judgment obtained by the Judgment Creditors.

> Not withstanding [sic] that, recalling the evidence of record, hundreds of thousands of dollars were funneled through into and out of Ronald Cohen Management Company until it – and we'll get to the "it" in a minute -- decided in 2009 to cease operating as the hub of the enterprise.
>
> And it did that, I find, in order to evade the payment of judgments. That was the reason. There was no other reason. It decided to shed itself of any money bank accounts or any ability to receive funds to evade. Not avoid. To evade lawful judgments.

Transcript of J. Rubin's Ruling at 5:23-6:7, *Tower Oaks Boulevard, LLC., et al. v. CW Capital LLC et al.*, Case No. 368256, August 19, 2014 (ECF 24, Movants' Ex. 8).

> [T]his is not an inability or failure to comply with corporate formalities. This is using the corporate formalities to create a spider web that nobody can get out of and nobody can get into. This is very, very smart. And very clever.

*Id.* at 6:18-21.

> [I] find shortly thereafter Ronald Cohen Management handed over the property management function including the collection of fees and payments to PMAS. Again I do not credit the notion that Ronald Cohen just wanted to retire, wanted to take it easy. That's not even remotely true. He runs the show. To this day. And has very, very good and clever lieutenants and subordinates and they're very smart. But at the end of the day, if it's important, I find nothing happens if he doesn't approve it or agree to it. Nothing of any import. I'm not saying that they have to ask him to buy stamps.
>
> And the initial transfer was made within days of the first big judgment hitting. I find that RCMC, Ronald Cohen Investments never been capitalized. In fact I find they were never intended to be anything other than shells. They were never intended to hold assets. They were simply a conduit. A pure conduit that threw off fees. But was a conduit to keep control of money. To keep it in or out of any of the satellite entities as it deemed to be appropriate.

*Id.* at 7:6-22.

> [T]his Ronald Cohen Management and PMAS is run like somebody's pair of jeans. It just has lots of pockets. And Ronald Cohen and Eric Segal decide which pocket to put money into and which pocket to take money out of.

*Id.* at 8:10-14.

> [I]n addition to the reasons I've stated, this jury found and I agree that the two judgment debtors through their agents, Segal and Cohen, intentionally interfered with the plaintiff's contract with the bank. They did it to bust the lease. The jury is right. And they did it with actual malice. I watched them testify. And I observed their, not only listened to their words, but watched their demeanor, the body language, the tone. This is beyond sharp elbowed business practices. This borders on unlawful in my judgment, which the plaintiff doesn't have to prove in this case. But they did prove actual malice by clear and convincing evidence in my judgment.
>
> I find PMAS by any definition is a successor entity to RCMC.

*Id.* at 9:8-21.

> It is certainly true and notably 100 percent of the stock of RCMC and 100 percent of the stock of RCII was owned by Mr. Cohen personally. And I find that the hand off to PMAS was a sham simply to avoid the coming judgments. And he gave it away to his family members so it wouldn't be -- so the car wouldn't be in his garage when the collection agent came. He gave them the car. And they gave them the keys to the car.
>
> This is nothing more than Ronald Cohen's instrumentality to do his business. And this is how he does it. It's operated and I find at such a level with the intent to deprive others of lawful funds that goes beyond mere, and anybody who knows me knows I respect corporate entities with the best of them. I find that the applicants who have made applications here in this case are the instrumentalities of Ronald Cohen. Piercing through RCMC. Frankly, it's easy. He is the wizard behind the curtain I find. There's no question about it in my mind.

*Id.* at 10:1-17.

> [I]t was the decision to pay or not to pay in the sole discretion I find of Ronald Cohen. And here he elected to move the pieces around the board. I find to be blunt, to stiff the plaintiffs and not pay them.
>
> He decided he won't do it. That's what happened. But the level of control, the level of absolute ability to manipulate and to run the levers of power go beyond frankly anything that I've seen in the civil courtroom in a long time.

-9-

*Id*. at 11:2-21.

These findings, in and of themselves, support the conclusion that the Debtor and its principal are acting in bad faith.  In addition, these findings support the conclusion that the Debtor filed this case with the bad faith motive to invoke the automatic stay on behalf of the Levied Entities, and later, the defendants in the Successor Liability Action.  The Debtor candidly admits that the reason for the filing was to stop the foreclosure of the Levied Entities – entities that the Debtor argues are not included in the estate.  Thus, this case is an effort by the Debtor to use the automatic stay to prevent the fair adjudication of the Judgment Creditors' rights against third parties that the Debtor contends are separate and distinct entities and are not included in the estate.

In this sense, the Debtor seeks to have it both ways.  It contends these third parties are not successors or transferors of the Debtor, but it seeks to bar the Judgment Creditors from pursuing their claims against the Levied Entities (and, recently, the defendants in the Successor Liability Action) on the grounds that the Judgment Creditors are violating the automatic stay in the Debtor's case.  To be sure, the Debtor makes this argument somewhat indirectly.  While it contends that the Levied Entities and the defendants in the Successor Liability Action are not included in the estate, it argues that the Judgment Creditors contend that the Levied Entities and the defendants in the Successor Liability Action are successors or transferors of the Debtor.  The Debtor argues therefore that the Bankruptcy Court should stay the litigation based on these assertions made by the Judgment Creditors.

This case fits precisely into the Fourth Circuit's definition of subjective bad faith.  The Debtor has stated clearly it has no intention of joining the Successor Liability Action or seeking to recover any assets from the defendants in that action or the Levied Entities on behalf of the

-10-

estate. It seeks to invoke the bankruptcy stay to prevent those efforts from going forward. Because the Debtor filed this case to invoke the automatic stay not on its behalf, but to attempt to protect entities who it concedes are not included in the estate, the court concludes that the case was filed with subjective bad faith.[2]

*Objective Futility*

In determining objective futility, the court must assess whether "there exists the realistic possibility of an effective reorganization." *Carolin Corp.*, 886 F.2d at 698 (citation and internal quotation marks omitted); *In re Premier Automotive Services, Inc.*, 492 F.3d 274, 280 (4th Cir. 2007). This review is in keeping with the principal that there must be "embodied in the petition some relation to the statutory objective of resuscitating a financially troubled [debtor]." *Carolin,* 886 F.2d at 701 (citation and internal quotation marks omitted).

Based on the filings in this bankruptcy case, as well as the admissions by the Debtor in the state court litigation, there is no realistic possibility for reorganizing because there is nothing to reorganize. The Debtor has no operations, income, employees who perform services for it, or assets of any value. While these facts are plainly established in the record, the court's finding is additionally supported by the testimony of the Debtor's own expert in the state court litigation given in the Judgment Creditors' litigation:

> Q   Based on your review of the books and records of Ronald Cohen Investments and RCMC, have you reached an opinion regarding either company's ability to pay a punitive damage award in this matter?
>
> A   Yes I have.
>
> Q   And what is that opinion?

---

[2] In so concluding, the court notes that the Debtor is not seeking to extend the automatic stay under the rationale of *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) by claiming that there is such an identity of interest between the Debtor and the third parties that extending the stay is necessary for a successful reorganization.

-11-

>A   Well Ronald Cohen Investments has no assets, so I think the answer's obvious that it can't -- has no ability to pay. And Ronald Cohen Management Company has no assets of any substance --
>
>Q   Okay.
>
>A   -- that can be converted to cash. The only thing that could possibly, in some future year, pay anything would be if, in fact, the litigation was successful and a large sum is received by Ronald Cohen Management, Inc.
>
>Q   Okay.
>
>A   I'm sorry, Ronald Cohen Management Company.
>
>Q   You heard the testimony about some furniture?
>
>A   Yes I have.
>
>Q   Cars?
>
>A   Yes.
>
>Q   What's your view of those as relates to RCMC's ability to satisfy a punitive damage award?
>
>A   Any value associated with those assets is *de minimis*.
>
>Q.   Have all the opinions expressed by you here today been based on a reasonable degree of certainty in the field of accounting, and based on your expertise in accounting in the real estate industry and accounting standards?
>
>A   I believe they are, yes.

Hr'g Transcript at 149:14-150:17, *Tower Oaks Boulevard*, Case No. 368256, May 21, 2014 (ECF 24, Movants' Ex. 11).

The expert witness's testimony is consistent with the testimony of Eric Siegel, the Vice President of the Debtor: "The company -- if you're referring specifically to [RCI] or [the Debtor] neither of them have any ability to generate income." Testimony of Eric Siegel Transcript at 26:17-19, *Tower Oaks Boulevard, LLC.*, Case No. 368256, January 24, 2014 (ECF 24, Movants' Ex. 14).

The Circuit Court found that the Debtor has no assets or operations as a result of its deliberate effort to render itself judgment proof.  It thus appears that the Debtor has been, to paraphrase the well-known phrase by Shakespeare, hoist by its own petard.[3]  Having stripped itself of any assets or operations of value, the Debtor has no business to reorganize.  But for whatever the reason, the Debtor's filings in this case and testimony in the state court cases establish it has no assets or operations that could be utilized in the reorganization process.  The absence of any business or assets establishes that the petition lacks any "relation to the statutory objective of resuscitating a financially troubled [debtor]."  *Carolin,* 886 F.2d at 701.

## Conclusion

For the foregoing reasons, the court concludes that the purposes of the Bankruptcy Code would not be furthered by permitting the Debtor to proceed and therefore will dismiss the case.  An appropriate order will be entered.

cc:    Debtor
       Debtor's Counsel
       All creditors and parties in interest
       United States Trustee

**End of Memorandum of Decision**

---

[3] William Shakespeare, *Hamlet,* act III, scene iv, line 207.